STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CW 06-338 consolidated with CA 06-743


KIMBERLY LINN CONWAY CROOKS

VERSUS

COREGIS INSURANCE COMPANY, ET AL.


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 211,483
HONORABLE GEORGE CLARENCE METOYER, JR., DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Marc T. Amy, Judges.

AFFIRMED.

Michael L. Glass
Attorney at Law
1733 White Street
Alexandria, LA 71301
(318) 484-2917
Counsel for Plaintiffs/Respondents:
Frank Crooks, Jr.
Kimberly Linn Conway Crooks

Wilbert Joseph Saucier, Jr.
Attorney at Law
2220 Shreveport Highway
Pineville, LA 71360
(318) 473-4146
Counsel for Plaintiffs/Respondents:
Frank Crooks, Jr.
Kimberly Linn Conway Crooks

**Daniel G. Brenner**
**Sherron Ashworth**
**Bolen, Parker & Brenner**
**P. O. Box  11590**
**Alexandria, LA 71315-1590**
**(318) 445-8236**
**Counsel for Defendants/Applicants:**
**Marshall Larry Jeane**
**Lois J. Nichols Normand**
**Clarence Sheppard**
**Coregis Insurance Company**
**City of Pineville**

**SAUNDERS, Judge.**

Kimberly Linn Crooks sustained injuries to her back and hip when she slipped and fell in the hallway of Pineville City Hall on January 17, 2002. She received treatment for her injuries until August 12, 2002, approximately eight months after the occurrence of the accident.

On January 1, 2003, Mr. and Mrs. Crooks filed suit alleging claims of bodily injury and loss of consortium, naming as Defendants, the City of Pineville, Coregis Insurance Company, City Marshal Larry Jeane, work release inmate Clarence Sheppard, and Lois J. Nichols Normand. Defendants answered Plaintiffs' petition alleging the comparative negligence of Plaintiff, Mrs. Crooks.

Defendants sought to have Plaintiff undergo a medical examination upon discovering that she had resumed treatment in February 2005, nearly two and a half years after she had ceased her initial treatment. The parties agreed that Mrs. Crooks would submit to a medical examination. However, despite two attempts, Mrs. Crooks was never evaluated. She flew to California on July 27, 2005, where she was treated by an orthopedist.

Defendants filed a Motion to Compel or, in the alternative, a Motion to Exclude Medical Evidence, claiming that they were deprived of their right to a medical examination. After a hearing, Defendants' Motion to Exclude Medical Evidence was denied, and Defendants filed for supervisory writs appealing the trial court's ruling, which have been consolidated with this appeal. After a trial on the merits, the trial court found in favor of Plaintiffs awarding them $47,063.00 in special and general damages. Defendants now appeal.

**FACTS AND PROCEDURAL HISTORY**

On January 17, 2002, Kimberly Linn Conway Crooks, sustained injuries to her back and hip when she slipped and fell in the hallway of Pineville City Hall. She entered the Utility Office from the outside of the building and asked where she could find her husband, Frankie Crooks, Jr., who was employed as a Code Enforcement Officer with the City of Pineville Marshal's Office. She then proceeded to walk through the double doors into the main hallway leading to the City of Pineville offices. As she stepped into the hallway, Mrs. Crooks slipped and fell on her right hip.

At the time of the accident, work release inmate, Clarence Sheppard, was mopping the floors of the hallway. He was under the supervision of Lois J. Nichols of the Pineville City Marshal's Office. However, when the accident occurred, Ms. Nichols was assisting another inmate and was not present. Immediately after Mrs. Crooks fell, she was helped off the floor and was taken into the Utility Office, where she sat on a bench while Tonja Smail, the utility supervisor who was sitting directly behind the customer service desk in the Utility Office at the time of the accident, went to find Mr. Crooks.

At the time of his wife's accident, Mr. Crooks was returning from lunch with Albert "Mickey" Basco, a police officer with the Pineville City Police Department. Ms. Smail located Mr. Crooks in the parking lot of City Hall and informed him that his wife had been injured. After reaching his wife, Mr. Crooks took her to the Rapides Regional Medical Center emergency room where an x-ray of her right hip was taken, and Mrs. Crooks was referred to orthopedist, Dr. David Levinsohn, at the Orthopedic Sports Medicine Clinic in Alexandria.

2

After the accident, Mrs. Crooks continued to suffer from sciatic pain shooting down her right leg, and experienced numbness in her right leg down to her knee. Dr. Levinsohn diagnosed Mrs. Crooks with piriformis syndrome and gave her an oral steroid. Four weeks later, she returned with the same symptoms. On her third visit, Dr. Levinsohn administered a steroid injection into Mrs. Crooks' upper hip bone in an attempt to alleviate her pain. The injection provided some relief; however, the sciatic pain continued, and all of the pain returned after two to three days. Mrs. Crooks remained in the care of Dr. Levinsohn until the end of July of 2002, approximately seven months, when he relocated to California. Over the course of her treatment with Dr. Levinsohn, Mrs. Crooks was prescribed Vioxx and Celebrex on several occasions, and was also advised to do exercises to aid her recovery process.

On January 8, 2003, Mr. and Mrs. Crooks, filed suit for negligence, claiming bodily injury and loss of consortium, and naming as Defendants, the City of Pineville, its insurer, Coregis Insurance Company, Pineville City Marshal Larry Jeane, work release inmate Clarence Sheppard, and Lois J. Nichols Normand. Plaintiffs' petition alleged Defendants' negligence in creating an unreasonable risk of harm to guests at City Hall, failure to provide proper signage, blockades and other warnings to its guests, failure to remove substance from the floor, failure to direct pedestrian traffic through the interior of the building, and failure to adequately supervise and control the inmate.

In the petition, Mrs. Crooks sought to recover damages for "numerous contusions, abrasions, and disabling injuries to her body" as well as mental anguish and distress. Additionally, Mr. Crooks brought a separate cause of action for loss of consortium due to the physical injury his wife incurred as a result of the accident.

3

Defendants filed an answer on January 27, 2003, arguing the comparative negligence of Plaintiff, Mrs. Crooks. In their answer, they asserted that she was partially at fault for the accident at issue due to her failure to maintain a proper lookout, as well as her failure to act as a reasonably prudent person. They additionally argued that Mrs. Crooks failed to mitigate her damages and that she suffered no physical or mental loss for which medical expenses were necessary. A supplemental and amending answer was filed and signed on April 21, 2003, in which Defendants further alleged that Mrs. Crooks was walking too fast under the circumstances and that she ignored the posted warning signs advising that the floor was wet.

In February of 2005, nearly two and one-half years after she had last seen Dr. Levinsohn, Mrs. Crooks returned to the Orthopedic Sports Medicine Clinic for treatment with orthopedist, Dr. Jeffrey Garrison. During her first appointment, Dr. Garrison diagnosed Mrs. Crooks with piriformis syndrome and prescribed her Relaflen, an anti-inflammatory medication. He also suggested physical therapy exercises.

After she received no real relief, Mrs. Crooks sought treatment from Dr. Stephen Flood, an orthopedic surgeon in Lake Charles, on June 17, 2005. Dr. Flood performed an SI joint block, in which he injected a steroid into her spine. On her second visit, Dr. Flood ordered an MRI and performed nerve conduction studies. He found that Mrs. Crooks was suffering from a muscle putting direct pressure on the sciatic nerve and diagnosed her condition as post traumatic piriformis syndrome.

Upon receiving notice that Mrs. Crooks had resumed seeking medical treatment, Defendants began the process of requesting an Independent Medical

Examination (IME). The parties agreed to schedule an evaluation at the convenience of Defendants and the examining doctor. The parties agreed that the medical examination would be performed by Dr. Rayland K. Beurlot on July 14, 2005 in Alexandria, Louisiana. Plaintiffs arrived at Dr. Beurlot's office at the appointed time. However, they refused to complete the new patient questionnaire provided to them by Dr. Beurlot's staff, and after telephoning their attorney, Mrs. Crooks left the doctor's office without being examined.

Subsequently, Defendants filed a Motion to Compel an IME of Mrs. Crooks, and the order was signed on July 23, 2005, setting the hearing for August 15, 2005.

The parties then conducted a conference with the trial judge in chambers, in which the trial judge instructed Mrs. Crooks to return to Dr. Beurlot to be examined. Further, it was determined that she did not have to fill out the questionnaire by hand; however, she was instructed by the trial judge that she would have to verbally answer any questions the doctor may have. The second evaluation was scheduled for July 26, 2005.

Mr. and Mrs. Crooks arrived at Dr. Beurlot's office at the appointed time on July 26, 2005. There is a dispute between the parties as to whether Mrs. Crooks refused to sign an "authorization" or " consent to examination" form. Defendants argue that Mrs. Crooks refused to sign the consent form, as required by Dr. Beurlot's office in order for him to conduct the medical examination. According to Defendants, counsel for Plaintiffs then contacted counsel for Defendants and informed him that he would not allow his clients to sign the three sentence consent form unless the phrases, "IME" and "Independent" were removed. Mrs. Crooks, however, maintains that she was never asked to sign an "authorization" or a "consent to examination"

5

form when she arrived at Dr. Beurlot's office for the second time, nor was she given any paperwork whatsoever to fill out. After sitting in the waiting room for approximately an hour and a half, Mr. and Mrs. Crooks were told by a member of Dr. Beurlot's staff that they could leave, as the doctor would not see Mrs. Crooks that day. Consequently, Mrs. Crooks left Dr. Beurlot's office yet again, without undergoing the medical examination.

The next day, July 27, 2005, Mr. and Mrs. Crooks flew to California for an appointment scheduled for July 28, 2005 with Dr. Aaron Filler at the Institute for Nerve Medicine in Santa Monica. Mr. Crooks had found Dr. Filler on the internet, and Dr. Flood assisted Mrs. Crooks in scheduling an appointment. On August 1, 2005, Dr. Filler performed an MRI guided approach for percutaneous chemo-myolytic ablation of the right piriformis muscle for decompression of the sciatic nerve, which involved 5 to 6 injections. Mrs. Crooks has incurred medical bills totaling $12,063.00, and although she has made no appointments for treatment with Dr. Filler in the near future, she has testified that she continues to be under his care.

On January 4, 2006, Defendants filed a Motion to Compel an IME or, in the alternative, a Motion to Exclude medical evidence after 2002, claiming that they were deprived of their right to a medical examination. After a hearing on the motion, the trial court denied Defendants' motion in open court on January 30, 2006. Defendants applied for supervisory writs of review seeking to have the interlocutory judgment overturned. These writs were granted and are consolidated with this appeal.

The matter came to trial on February 2, 2006. After hearing the evidence and testimony, the trial court rendered judgment in favor of Plaintiffs, giving its reasons for judgment in open court. Plaintiff, Mrs. Crooks, was awarded general damages in

6

the amount of $30,000.00 and special medical damages in the amount of $12,063.00. Additionally, the trial court awarded $5,000.00 in damages to Mr. Cooks for his loss of consortium claim. All costs and fees were assessed to Defendants. Defendants now appeal.

**ASSIGNMENTS OF ERROR**

**Assignment of Error No. 1:** The trial court erred in allowing Plaintiffs to present medical testimony concerning treatment occurring after 2002.

**Assignment of Error No. 2:** The damages awarded are manifestly erroneous in light of the medical evidence that should have been allowed in this case.

**STANDARD OF REVIEW**

A trial court's factual determinations are subject to the manifest error standard of review and may not be overturned unless they are found to be "manifestly erroneous" or "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840 (La.1989). In applying this standard, the appellate court must determine not whether the trier of fact's conclusion was right or wrong, but that it was reasonable. *Stobart v. State, through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous. *Id.* at 880. Therefore, "[i]f the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

**LAW AND ANALYSIS**

**Assignment of Error No. 1:** The trial court erred in allowing Plaintiffs to present medical testimony concerning treatment occurring after 2002.

Defendants argue that they had a right to an IME in this case pursuant to La.Code Civ. P. art. 1464, which states:

> When the mental or physical condition of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control, except as provided by law. In addition, the court may order the party to submit to an examination by a vocational rehabilitation expert or a licensed clinical psychologist who is not a physician, provided the party has given notice of intention to use such an expert. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Defendants assert that Mrs. Crooks placed her injuries to her back and hip area at issue when she and Mr. Crooks filed suit, and therefore, they deserve the opportunity to have an IME conducted in order to reasonably defend against Mrs. Crooks' claims of injury. Plaintiffs counter this argument, noting that the only IME provided for under Louisiana law is found in La.R.S. 23:1317.1, and deals with the examination of a workers' compensation claimant by a court appointed physician. Indeed, La.Code Civ. P. art. 1464 does not entitle Defendants to an IME. Rather, it allows a court to order a party whose physical condition has been put at issue to submit to a physical examination on the motion of another party and for good cause shown. In this case, although there is no written record of the determinations made during the conference in the trial judge's chambers, and there is a dispute between the parties as to what was determined regarding what paperwork Mrs. Crooks had to fill out, there is no dispute as to the fact that the trial judge ordered Mrs. Crooks to return to Dr. Beurlot for examination.

8

Plaintiffs point out that Mrs. Crooks was required only to appear to be examined by Defendants' retained physician, without the necessity of executing the new patient questionnaire. Plaintiffs assert that, in this regard, Mrs. Crooks was 100% compliant, as it is uncontradicted that Mrs. Crooks appeared at Dr. Beurlot's office at the scheduled time set for the second examination and that after waiting approximately one hour and a half, she was dismissed by Dr. Beurlot's staff.

Defendants argue that Plaintiffs' objections to the questions posed in Dr. Beurlot's pre-examination questionnaire were "no more than thinly disguised attempts to subvert the routine IME process" and to hamper the discovery process. They assert that Dr. Beurlot utilizes the Ostewestry Disability Questionnaire, a pre-exam questionnaire used widely throughout the United States by physicians, including Dr. Filler; however, they point out, Mrs. Crooks did not object to completing Dr. Filler's questionnaire, or several similar questionnaires at doctors of her own choosing, including Dr. Flood. From this, they conclude that Plaintiffs used the nature of the questions as an excuse for their "bad faith refusal to submit to the IME." We find this argument to be moot, as the issue was resolved when the parties met with the trial court judge in chambers after the first attempted medical examination with Dr. Beurlot, and the judge determined that Mrs. Crooks had to return to Dr. Beurlot for the medical exam; however, she did not have to complete the questionnaire in her own hand.

Defendants further argue in their appeal that Plaintiffs acted in bad faith to deprive it of the court-ordered IME. They argue that Plaintiffs had adequate time between the July 14, 2005 medical exam and the re-scheduled July 26, 2005 medical

9

exam to review any patient documents and express their objections before arriving at Dr. Beurlot's office for the second appointment. They argue that instead, Plaintiffs reserved their objections to the inclusion of the phrases "independent medical examination" and "independent examiner" with the intention of preventing the IME altogether, eventually undergoing surgery, and severely prejudicing Defendants' ability to defend their claims.

First, we note that the trial court never ordered an IME of Mrs. Crooks. It is undisputed that the trial judge ordered that Mrs. Crooks return to Dr. Beurlot for a medical examination. However, as stated earlier, there is no documentation of such order in the record. In fact, the record is unclear in many places. What we do know is that Mrs. Crooks appeared for her medical examination and has testified that she was ready to answer any questions that may be asked of her by Dr. Beurlot, as she was ordered to do by the trial court judge. Defendants stringently argue that Mrs. Crooks refused to sign the "authorization" or "consent to examination" form. They aver that their counsel then received a telephone call from Plaintiffs' counsel advising him that he would not allow his client to sign the form if it included the current language, thus preventing her from being medically examined by Dr. Beurlot. Consequently, Plaintiffs were told to leave Dr. Beurlot's office by a member of his medical staff, as he would not see Mrs. Crooks that day.

Under the Louisiana Rules of Professional Conduct, Rule 2.1, an attorney "shall exercise independent professional judgment and render candid advice." However, pursuant to Rule 1.2, "a lawyer shall abide by a client's decisions concerning the objectives of representation, and, as required by Rule 1.4, shall consult with the client

10

as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation." Therefore, although there was a phone call placed by Plaintiffs' counsel to Defense counsel in regard to the advice he gave his client to signing the consent form, the final decision of whether to sign the consent form ultimately lay with Mrs. Crooks. As stated earlier, there is no evidence in the record that shows Mrs. Crooks was presented with, or refused to sign an "authorization" or "consent to examination" form on her second trip to Dr. Beurlot's office. However, the record does contain the uncontradicted testimony of Mrs. Crooks that establishes that she was not asked to sign any paperwork when she arrived. In fact, she testified that had she been presented a consent to be examined form, she would have signed it. At trial, Defense counsel asked Mr. Crooks, "And you don't know what was going on with Dr. Beurlot's office, your lawyer's office and my office while you were sitting there in the waiting room to, for your wife to be examined; do you?" He replied, "I thought everything was worked out before our visit. So, no, I don't know what's going on. I just knew we were sitting in a lobby." Mr. Crooks' testimony tends to show that neither he nor Mrs. Crooks knew about the telephone conversation or any problem regarding the consent form.

Given these facts, we do not find that Defendants have carried their burden of proving that Plaintiffs did not comply with the orders of the trial court and acted deliberately and in bad faith to deprive them of the court ordered medical examination. Therefore, we do not find that the trial court abused its discretion in allowing medical

11

evidence obtained after 2002 to be admitted at trial. Accordingly, we affirm the decision of the trial court.

**Assignment of Error No. 2:** The damages awarded are manifestly erroneous in light of the medical evidence that should have been allowed in this case.

Defendants argue in their second assignment of error that the award of damages to Plaintiffs is manifestly erroneous, as it is based, in large part, on medical evidence from 2005, which Defendants maintain should have been excluded from evidence by the trial court. We have determined that the trial court did not abuse its discretion in allowing the medical evidence obtained after 2002 into evidence. Therefore, Defendants' argument as to quantum is moot.

**CONCLUSION**

Upon review of the record, we do not find that the trial court abused its discretion in allowing medical evidence obtained after 2002 to be admitted at trial. Additionally, we do not find that the trial court committed manifest error in its award of damages to Plaintiffs. Accordingly, we affirm the decision of the trial court and assess all costs of the appeal to Defendants.

**AFFIRMED.**